IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| STACEY LOUISE CASTILLO | § | |
| | § | |
| V. | § | MO-18-CV-00098-DC |
| | § | MO-14-CR-00227(6)-DC |
| UNITED STATES OF AMERICA | § | |

## ORDER

Before the Court are Movant Stacey Castillo's pro se Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (ECF No. 343), her motion seeking an evidentiary hearing (ECF No. 345), the Government's Response (ECF No. 355), and Castillo's Reply (ECF No. 394). After reviewing the parties' pleadings, the record of the proceedings before the District Court in the underlying criminal case, and the applicable case law, for the following reasons, the § 2255 motion is **denied**.

### I. BACKGROUND AND PROCEDURAL HISTORY

A superseding indictment returned December 17, 2014, charged Castillo and seven codefendants with conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One); aiding and abetting the use, carrying, and brandishing of a firearm during a drug trafficking offense, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A) (Count Two); and murder resulting from the use and discharge of a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. §§ 2 and 924(j) (Count Three). (ECF No. 64). At the conclusion of a jury trial, Castillo was found guilty on all three counts and sentenced to concurrent terms of 240 months and life imprisonment pursuant to her convictions on Count One and Count Three, respectively, and a consecutive sentence of 7 years

imprisonment on Count Two. (ECF No. 221).

The facts underlying Castillo's conviction were summarized by the Fifth Circuit Court of Appeals:

> On May 13, 2014, Sean Lamb was found dead in the front passenger seat of his Ford Expedition in Odessa, Texas. Lamb had been shot ten times from behind his seat at close range with a gun firing nine-millimeter ammunition.
>
> An investigation linked Lamb's death to the drug operation of Ruben Hernandez. Ruben sold cocaine, methamphetamine, and marijuana. Ruben's sister, Liz Hernandez, often stored his drugs at her apartment. In May of 2014, Liz was also helping Ruben distribute them.
>
> On or about May 11, Ruben went to Liz's apartment with a gallon-sized bag of what he said was nine ounces of methamphetamine—more than he typically brought to her home. Johnny San Miguel, Steven Saenz, and Sean Lamb had recently begun living with Liz, and Ruben asked the three men and Liz to help him sell the meth. Ruben divided the drugs, gave each of them a small portion to sell, and, unbeknownst to Liz, left about six ounces of the meth in her purse.
>
> When Ruben returned to Liz's apartment the next morning looking for the drugs he had left in her purse, he and Liz realized that San Miguel, Saenz, and Lamb had stolen the drugs from Liz's purse, taken her truck, and disappeared. Ruben told Liz they needed to find the drugs or his drug bosses might find their mother in Mexico and harm her. After their efforts to recover the drugs failed, Liz enlisted the help of Stacey Louise Castillo. Castillo, who considered herself a "regulator" of sorts and was often hired to find people, agreed to locate the three men and recover the stolen drugs.
>
> On May 13, Liz, Ruben, Castillo, Anthony Gonzales, Ray Olgin, Rudy Paredes, and Noe Galan met at Liz's apartment to discuss how to find the stolen meth. Liz's son, Brian Hernandez, was there as well. Gonzales brought a camouflaged MAC–102 to the meeting; Castillo brought a pink and gray .38 caliber revolver. Castillo told the group she believed Lamb and Saenz were informants and they needed to "hurry up and find them and get rid of them."
>
> While the group was meeting, Brian received several text messages from Lamb, apologizing for what he, San Miguel, and Saenz had done and asking if he could get his clothes from Liz's apartment. Ruben and Castillo instructed Brian to respond to Lamb's text and arrange a meeting. Lamb agreed to meet and went with two friends to the alley Brian identified as the meeting spot.

As Lamb waited for Brian in the alley, Ruben, Liz, and the others entered suddenly and positioned their vehicles so that Lamb could not escape. After allowing Lamb's two passengers to exit, Liz, Ruben, Galan, and Gonzales jumped into Lamb's Expedition, pushed him into the passenger seat, and began beating him and demanding to know where Saenz and the drugs were.

Screaming for mercy, Lamb told his assailants that Saenz was at the Parkway Inn and he would help them find him. The group left the alley and took Lamb (in his Expedition) to the Parkway Inn, but Saenz was not there. When they began beating Lamb again, he told them Saenz could be at a friend's house. On their way to this next location, Gonzales, Castillo, and Liz took a wrong turn and were separated from the rest of the group. Liz testified that Castillo later received a phone call telling her that Galan had killed Lamb. Ballistics indicated that the shots were fired from directly behind the front passenger seat, which, according to Liz, is where Galan was seated.

The government has never strayed from the position that Galan was the shooter. But it sought to hold all eight of those involved in hunting down Lamb—Liz, Brian, Ruben, Galan, Olgin, Paredes, Castillo, and Gonzales—responsible for the murder, using aiding and abetting and conspirator theories of liability. A grand jury charged them all with: (1) conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 846 and 841(a)(1); (2) the "use and carry" of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A); and (3) murder resulting from the use of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(j). The two firearm counts asserted aiding and abetting liability under 18 U.S.C. § 2 and conspirator liability under *Pinkerton v. United States*, 328 U.S. 640[] (1946).[1]

Ruben escaped to Mexico the day after Lamb's murder; he and Galan remain at large.[2] Liz and Brian entered guilty pleas and testified for the government. That left Olgin, Paredes, Castillo, and Gonzales as defendants at the trial. The jury found them guilty on all counts.

---

[1] With regard to all Defendants, the indictment alleged:
. . . the Defendants unlawfully killed S.L. through the use of a firearm, which killing is a murder as defined in Title 18, United States Code, Section 1111 such murder being willful, deliberate, malicious and premeditated in violation of Title 18 United States Code, Sections 924(j) and 2, and *Pinkerton v. United States*, 328 U.S. 640 (1946) (Pinkerton liability).
(ECF No. 64).

[2] Noe Galan was arrested on May 8, 2018, and is awaiting trial.

The verdict form had more questions than is typical in criminal trials. The defendants requested that the court ask not just the general verdict question of "guilty" or "not guilty" for each count, but also special interrogatories related to Counts Two (the "use and carry" of a firearm charge) and Three (the murder charge). The government did not object to this request. The court asked the special questions to ensure that the jury was unanimous on the theory of liability in light of the multiple theories alleged.

The first two interrogatories related to the "use and carry" firearm charge. Jury Question 1 asked whether each defendant was guilty of the "use and carry" firearm charge based on a theory of personal liability, conspirator's liability, or aiding and abetting. The jury found Olgin and Gonzales guilty under a theory of conspirator's liability, but found Paredes and Castillo guilty under a theory of personal liability. Jury Question 2 asked whether the firearm was brandished, discharged, or neither; for each of the four defendants, the jury marked "brandished."

The second two interrogatories concerned the murder charge. Similar to the first interrogatory, Jury Question 3 asked the jury to determine which of the three theories of liability supported a guilty verdict on the murder charge. The jury answered that Paredes, Castillo, and Gonzales were guilty based on personal liability, whereas Olgin was guilty based on conspirator's liability. Finally, the jury was asked whether the defendants were guilty of first or second degree murder, and the jury found all four guilty of first degree murder.

Paredes, Castillo, and Gonzales moved for judgment of acquittal on all counts, but focused on Counts Two and Three. They argued that there was no evidence to support the jury's finding of "personal liability" on these counts. The district court acknowledged that the evidence showed that Galan, rather than any of the four defendants, shot Lamb, but nonetheless found that the jury's answers to Jury Questions 1 and 3—which in some instances were inconsistent with the evidence—did not control because the interrogatories were "unnecessary and inconsequential." The court thus denied the defendants' motions on the ground that "there was evidence to support the convictions of all [d]efendants under the Pinkerton/conspirator liability theory" even when that was not the theory the jury indicated it agreed on in its answers to the special questions.

The four defendants received the same consecutive sentences: twenty years for the drug convictions *that are not challenged on appeal*; seven years for the "use and carry" firearm convictions; and life for the murder convictions.

*United States v. Gonzales, et al.*, 841 F.3d 339, 342-45 (5th Cir. 2016) (emphasis added), *cert. denied*, 137 S. Ct. 1237 (2017).

Mr. Erbaugh was appointed to represent Castillo on appeal. (ECF No. 234). Castillo did not appeal her conviction or sentence on Count One. With regard to Count Two, the Fifth Circuit found Castillo could only be guilty of § 924(c)'s lesser "carrying" offense and, accordingly, it affirmed the conviction but remanded for resentencing on Count Two. *Id.* at 354. The Fifth Circuit vacated Castillo's conviction pursuant to Count Three, the charge of murder resulting from the use of a firearm during and in relation to a drug trafficking offense, because of the conflict between the verdict and jury interrogatories, thereby relieving her of a life sentence. *Id.* at 359.

Mr. Erbaugh continued to represent Castillo for resentencing. (ECF No. 277). A resentencing Presentence Investigation Report ("PSR") was prepared. (ECF No. 283). In regard to Count One, the resentencing PSR assessed Castillo's offense level at 43 and her criminal history category as II, resulting in a guideline sentencing range of 240 months imprisonment, the statutory maximum. (ECF No. 283 at 10, 12, 16). The PSR "cross referenced" the murder in computing Castillo's offense level for Count One, citing U.S.S.G. §2A1.1, providing that an offense involving first degree murder has a base offense level 43. (ECF No. 283 at 9).[3]

The resentencing PSR noted "[t]he guidelines are not applicable to Count Two . . . as the statute calls for a mandatory term of at least 5 years (60 months)." (ECF No. 283 at 10). The resentencing PSR did not consider any relevant conduct when assessing the guideline range on Count Two, nor did it calculate an offense level or criminal history as to Count Two. The PSR

---

[3] The Fifth Circuit has held this section applicable when a defendant is a part of a drug conspiracy and a murder is committed by any one of the conspirators in furtherance of the conspiracy:
> . . . In determining whether or not to apply a [murder] cross-reference in a conspiracy case, a district court must take into account "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. §1B1.3.

*United States v. Smith*, 224 F.3d 766, 2000 WL 992504, at *6-7 (5th Cir. 2000).

5

further noted Castillo still faced a charge of capital murder brought by the Ector County Sheriff's Office. (ECF No. 283 at 12). Additionally, the probation officer did not identify any factors which would warrant a departure from the guideline sentencing range and did not identify any factors under 18 U.S.C. § 3553(a) that would warrant a sentence outside the advisory guideline range. (ECF No. 283 at 18). Castillo did not file any objections to the resentencing PSR. (ECF No. 283-1).[4]

On June 14, 2017, Castillo was resentenced to the previously imposed and unchallenged sentence of 240 months imprisonment on Count One, and resentenced to the mandatory minimum consecutive term of 60 months imprisonment on Count Two. (ECF No. 289). At her resentencing the Court told Castillo:

> Ms. Castillo, you have the right to appeal your sentence and conviction . . . If you cannot afford an attorney to represent you on appeal, an attorney will be appointed for you.
>
> With few exceptions, any Notice of Appeal must be filed within 14 days from today in writing. And if you cannot afford it, a transcript of the record in this case will be prepared for appeal at the government's expense.

(ECF No. 354 at 12). When the Court asked: "Any questions, Ms. Castillo?" she replied: "No sir. Thank you." (*Id.*).

---

[4] In her first sentencing proceeding Castillo objected to PSR's cross-reference of the murder when calculating her Base Offense Level on Count One. (ECF No. 212-1 at 2 (Objection No. 5, with regard to PSR ¶ 32)). This objection was withdrawn at Castillo's initial sentencing based on the probation officer's response to the objection. (ECF No. 257 at 5). The probation officer had concluded: "As the defendant was convicted of Count 3 – Aiding and Abetting in Murder Resulting from the Use and Discharge of a Firearm During and in Relation to a Drug Trafficking Offense, the cross reference should apply." (*Id.*). Although this conviction was vacated on appeal based on a legal technicality, the record and trial transcripts establish by a preponderance of the evidence that Castillo participated in the drug trafficking conspiracy and the events resulting in the murder of Mr. Lamb. Accordingly, there was no error in the application of §2A1.1 in assessing Castillo's Base Offense Level notwithstanding the vacatur of the conviction. *See United States v. Watts*, 519 U.S. 148, 152, 156 (1997).

Four months later, on September 14, 2017, Mr. Erbaugh moved to withdraw as Castillo's counsel, and the motion was granted. (ECF No. 315). On September 28, 2017, Castillo executed a motion requesting transcripts and "pertinent documents." (ECF No. 317). In the motion Castillo stated she was "exercising her right to attack her sentence via collateral review." (ECF No. 317 at 1). The Court denied the motion, noting that although indigent appellants are entitled to a free transcript this entitlement is not available to defendants seeking relief via a motion to vacate their sentence pursuant to § 2255. (ECF No. 318). On November 28, 2017, Castillo filed a Notice of Appeal. (ECF No. 319). The pleading asked the Court "to grant her an extension to file an appeal to address grounds that she feels will reduce her sentence," stating:

> Petitioner was not notified by counsel of her right to appeal her file an additional appeal [sic] after being resentenced on June 14, 2017. After being resentenced, she requested to her appellate attorney that there were additional grounds that she wanted to be raised after her sentence was vacated and remanded. . . .

(ECF No. 319). The Notice of Appeal was construed by the District Court as a motion seeking additional time to appeal, and was denied because it was not filed within 44 days of the entry of judgment. (ECF No. 320).

On December 7, 2017, the Fifth Circuit Court of Appeals informed Castillo:

> You have filed your notice of appeal as pro se. Before your appeal can proceed you must take one of the following actions: (1) retain an appellate attorney; (2) file a motion for appointment of counsel, and complete and return the enclosed CJA 23 financial affidavit with your motion; or (3) clearly and unequivocally express your intent to proceed pro se in writing.

*See United States v. Castillo*, No. 17-51050. The appeal was dismissed by the Fifth Circuit for want of prosecution on January 18, 2018. (ECF No. 322).

In her § 2255 motion, Castillo seeks only the opportunity to appeal the sentence re-imposed on Count One, which conviction and sentence she did not challenge in her first appeal; Castillo

7

does not challenge her sentence or conviction for Count Two, the charge remanded to the District Court. Castillo alleges:

> After [re]sentencing, I was unaware that another appeal could be filed if there was an issue regarding my resentencing. After I arrived back to the Federal Women's facility, I emailed counsel, regarding additional grounds that I wished to be filed on direct appeal. He stated that he was no longer my appointed counsel on the record and if an [additional] appeal needed to be filed, I would have to do so on my own . . . At this time, I am requesting that this court, grant an evidentiary hearing to resolve this matter or reccommends (sic) that this honorable court direct the clerk of court to reinstate the judgement of conviction in her case and allow her to file a direct appeal. Had counsel consulted with her a timely notice of appeal would have been filed.

(ECF No. 343 at 4). In her motion seeking an evidentiary hearing, filed in tandem with her § 2255 motion, Castillo asserts:

> After the resentencing a hearing that relieved Castillo of a life sentence, she was unaware that a direct appeal could be filed on her behalf. Once Castillo returned to federal prison, she asked counsel questions, via email, pertaining to the filing of a direct appeal regarding material facts that would entitle her to relief . . . Castillo asserts that there were meritorious grounds that could have been addressed that would have significantly reduced her sentence. His failure to do so denied her of a entire judicial proceeding to which she is due by the Constitution.

(ECF No. 345 at 1-2).

Castillo contends that her sentence on Count One must be vacated because:

> . . . the murder cross reference should not have applied due to her not being at the scene when the murder occurred . . .
> The death of Sean Lamb was unknown and was not the objective of the conspiracy. The choice that Noe Galan made was that of his own and in no way was in furtherance of drug trafficking activity. Based on this reasoning, the complexity of the conspiracy, and the fact that the death of Sean Lamb was not in furtherance of drug trafficking activities, the murder cross reference should not apply, therefore, the court would have considered a variance, had counsel pursued these grounds, her sentence would have been significantly less.

(*Id.*). She further asserts:

> After sentencing, when she requested that counsel file a notice of appeal on her behalf, he should have done so without his thoughts on what may or may not happen.
>
> ***
>
> In addition, Castillo states that since her resentencing an arrest has been made in relation to her case that will clear up the murder cross reference applied to her. There are several different facts and case law that she argues that could have been submitted on her behalf and taken into consideration that may have possibly directed the court to consider prior to making his decision. As the district court, he/she has the authority to render a sentence that achieves the goals set under the 3553(a) factors. The court is no longer bound by mandatory guidelines. Counsel could have simply laid out facts of the case that warrant a downward departure or variance based on the 3553(a) factors. Counsel could have argued for a downward departure under 5K2.1 or if maybe her behavior was aberrant considering that Castillo did not pull the trigger and that the death of Lamb was not reasonably foreseeable to her at that time.

(ECF No. 394 at 2). Castillo argues:

> In light of the arguments and reasons given by Castillo regarding her appeal and her counsel's failure to request a sentence below the mandatory minimum of 20 years, she humbly prays that this court entitle her to relief by granting an evidentiary hearing or resentencing her to a sentence below the mandatory minimum.[5]

(ECF No. 394 at 3).

## II. DISCUSSION

### A. Standard of Review

A federal defendant may move to vacate, set aside, or correct her sentence if: (1) the imposition of the sentence was in violation of the Constitution or the laws of the United States; (2) the District Court that imposed the sentence lacked jurisdiction; (3) the sentence imposed was

---

[5] Castillo misapprehends the mandatory minimum and maximum sentences with regard to her convictions and sentences. As noted in the PSR, which Castillo told the Court she had reviewed with her counsel, the maximum term of imprisonment on Count One is 20 years and there is no minimum sentence. With regard to Count Two, the minimum term of imprisonment is five years and the maximum term is life; Castillo received the mandatory minimum sentence on Count Two, which she does not challenge in this § 2255 action.

9

in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

**B. Merits**

The relief sought by Castillo is reformation of her sentence on Count One, by means of the opportunity to appeal this sentence. Seeking an out-of-time appeal, Castillo alleges her counsel was ineffective for failing to file an appeal after she was resentenced.

The Sixth Amendment guarantees a defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The proper standard for evaluating counsel's performance under the Sixth Amendment is "reasonably effective assistance." *Id.* at 687. To be entitled to relief on an ineffective assistance of counsel claim, a movant must establish her counsel's performance was deficient and the deficiency prejudiced her defense. *Id.* The Supreme Court has held that the *Strickland* test applies to claims that counsel was constitutionally ineffective for failing to file a notice of appeal when expressly instructed to do so in. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). *See United States v. Bejarano*, 751 F.3d 280, 285 (5th Cir. 2014).

The initial inquiry in a *Flores-Ortega* matter is whether counsel consulted with the defendant regarding an appeal. Castillo does not clearly allege that counsel failed to consult with her regarding an appeal. Mr. Erbaugh has filed an affidavit addressing Castillo's allegations, stating:

> 5. Before the resentencing hearing, I had a couple of conversations with Castillo about how she may want to consider presenting herself to the District Court during resentencing. At Castillo's first sentencing on August 6, 2015, Castillo's prior attorney asked the District Court if Castillo could have an "opportunity to say something to her family with the Court's permission." After the District Court gave Castillo permission to do so, Castillo made the following remarks:

> "I love you guys. Thank y'all for your support. I'm not giving up on us and believing in us, and we'll win the appeal. God knows the truth and that's all that matters and I am at peace with that. And I love y'all."
>
> *I told Castillo that, even though she could appeal the resentencing decision, she should not make the same sort of remarks at the resentencing hearing.* I explained to Castillo that the District Court could make an upward variance in response to such a statement at resentencing. In fact, I told Castillo that the District Court could make an upward variance without any advance notice to her that it was doing so. *Finally, I told Castillo that she probably would not have any good arguments to challenge such an upward variance on appeal of the resentencing decision.* I explained to her that the District Court could impose another life sentence at resentencing and that it probably would not be considered "vindictive resentencing" under Fifth Circuit precedent. Accordingly, I recommended that Castillo simply express her remorse for the murder at resentencing and that she not make any comments during the hearing about appealing the resentencing decision.
>
> 6. After explaining to Castillo that the District Court could make an upward variance at resentencing without any advance notice to Castillo, Castillo became concerned about the possibility of this outcome. At resentencing, the District Court did not make a sua sponte upward variance. However, the government's attorney did suggest that an above-guidelines sentence would be appropriate at resentencing. Due to the government's failure to give Castillo advance notice that it would seek an above-guidelines sentence, I objected to the government's request. To Castillo's relief, the District Court declined to make an upward variance and/or departure and imposed a within-the-guidelines sentence at resentencing. Significantly, the within-the-guidelines sentence was the statutory minimum for a § 924(c) violation. At the conclusion of the resentencing hearing, Castillo appeared pleased that she received not only a within-the-guidelines sentence, but also the minimum sentence under § 924(c). *Castillo did not ask me to appeal the resentencing decision. In fact, after the resentencing hearing, Castillo did not even mention the possibility of appealing the resentencing decision.*

(ECF No. 355-3 at 2-4) (emphasis added).

Castillo does not address these allegations in her reply, but instead reiterates that she told counsel she wanted to appeal after resentencing and counsel told her none of the arguments she wished to raise were meritorious. (ECF No. 394 at 1) ("After sentencing, when she requested that counsel file notice of appeal on her behalf, he should have done so without his thoughts on what

may or may not happen."). Castillo's conclusory statement that she was unaware she could appeal after resentencing is belied by the post-sentencing emails from Castillo to counsel supplied by counsel in response to the § 2255 motion. (ECF No. 355-3 at 14, 18). Castillo's statement that she was unaware she could appeal after resentencing is also belied by the District Court's admonishment to Castillo at resentencing. (ECF No. 354 at 12) ("Ms. Castillo, you have the right to appeal your sentence and conviction . . . With few exceptions, any Notice of Appeal must be filed within 14 days from today in writing."). Therefore, the Court concludes that all of the record evidence supports the conclusion that counsel did consult with Castillo regarding an appeal.

The gravamen of Castillo's claim is that counsel did not file an appeal although instructed to do so. The Supreme Court held in *Flores-Ortega* that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable, establishing the deficient performance prong of the *Strickland* test. 528 U.S. at 477. The Supreme Court noted, however, that "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's *express* instructions with respect to an appeal." *Id.* Accordingly, to prove deficient performance of counsel under *Flores-Ortega*, the movant must produce evidence that she sufficiently and promptly communicated to counsel her desire to take an appeal and that counsel ignored this request. *Flores-Ortega*, 528 U.S. at 485 *Bejarano*, 751 F.3d at 285.

A defendant bears the burden of establishing by a preponderance of the evidence that she instructed counsel to file a notice of appeal. *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007). Counsel has filed an affidavit averring under oath that Castillo never instructed him to file an appeal, and he provides emails from Castillo to counsel which support counsel's statements. (ECF No. 355-3). Resolution of the question of whether the defendant clearly expressed a timely

request for counsel to file a notice of appeal can be based on an affidavit which is supported by other evidence in the record. *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981); *United States v. Pena-Garavito*, 539 F. App'x 506, 507 (5th Cir. 2013).

Counsel's sworn statement that Castillo did not request an appeal is supported by the record and by the emails from Castillo to counsel. Castillo produces no evidence that she sufficiently and timely communicated to counsel her desire to take an appeal and that counsel ignored this request. Notably, although the record indicates Castillo was informed at resentencing she had fourteen days to file a notice of appeal, she did nothing to pursue an appeal until more than *four months* after being resentenced and *after* indicating her desire to instead seek collateral relief. Castillo's first pleading after resentencing requested transcripts for the purpose of bringing a collateral attack on her sentence. (ECF No. 317). She did not seek an appeal until she was informed she could not receive a free copy of transcripts unless she established that she was an indigent defendant proceeding with an appeal. (ECF Nos. 318 & 319). Castillo's eventual filing of notice of appeal does not establish that she wanted to seek relief via an appeal rather than via a § 2255 action; it is, instead, an indication she wanted free transcripts of her resentencing proceedings.

Furthermore, pursuant to the holding in *Flores-Ortega*, a movant can establish prejudice arising from counsel's deficient performance only when counsel's failure to file a requested appeal results in the loss of an appeal to which the defendant was entitled. The *Flores-Ortega* opinion emphasized that it was "break[ing] no new ground" by requiring proof that counsel's errors actually "caused the defendant to forfeit a judicial proceeding to which [s]he was otherwise entitled." 528 U.S. at 485. "[D]enial of the entire judicial proceeding itself, which a defendant wanted at the time and *to which [s]he had a right*," the Supreme Court concluded, "demands a presumption of prejudice." *Id.* at 483 (emphasis added). However, the Court rejected a per se

prejudice rule, concluding such a rule would "ignore[] the critical requirement that counsel's deficient performance must actually cause the forfeiture of defendant's appeal." *Id.* at 484.

Castillo was not entitled to appeal her sentence on Count One after the remand. The Mandate Rule precluded the District Court from altering Castillo's sentence on Count One because the only issue properly before the District Court on remand was the issue arising from the remand, i.e., her sentence on Count Two. *United States v. Lee*, 358 F.3d 315, 323 (5th Cir. 2004) ("All other issues not arising out of this court's ruling and not raised in the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below."); *United States v. Teel*, 691 F.3d 578, 583 (5th Cir. 2012); *United States v. Griffith*, 522 F.3d 607, 610 (5th Cir. 2008). Castillo's claim that the murder cross-reference was improperly applied to calculate her sentencing guideline range on Count One was waived by her failure to raise the claim in her first appeal. *See Lindquist v. City of Pasadena*, 669 F.3d 225, 239 (5th Cir. 2012) ("[A]n issue that could have been but was not raised on appeal is forfeited and may not be revisited by the district court on remand." (emphasis omitted)). The waiver doctrine, like the law-of-the-case doctrine, "serves judicial economy by forcing parties to raise issues whose resolution might spare the court and parties later rounds of remands and appeals." *United States v. Castillo*, 179 F.3d 321, 326 (5th Cir. 1999) (citation and internal quotation marks omitted), *reversed on other grounds*, 530 U.S. 120 (2000). There is no doubt Castillo waived her claim seeking a decrease in her sentence on Count One based on an improper calculation of her sentencing guideline range because she did not challenge that conviction or sentence in her appeal.[6]

---

[6] *Flores-Ortega* did not involve a defendant who had waived their right to an appeal and several of the Circuit Courts of Appeal have declined to apply *Flores-Ortega*'s presumption of prejudice in cases

To the extent Castillo claims her trial counsel was ineffective for failing to challenge her sentence on Count One in her original criminal proceedings or on appeal, the claim must be denied because she is unable to establish that counsel's performance was deficient or that she was prejudiced by counsel's actions. Castillo's claim that the murder cross-reference was improperly applied is without merit. Two of Castillo's codefendants asserted in their appeals that U.S.S.G. §2A1.1 could not be properly applied to the coconspirators who were not the actual shooter, and the Fifth Circuit denied these claims. *See Gonzales*, 841 F.3d at 358-59. The Fifth Circuit Court of Appeals has denied similar claims in other cases. *See United States v. Causey*, 185 F.3d 407, 420-21 (5th Cir. 1999); *United States v. Smith*, 224 F.3d 766, 2000 WL 992504, at *6-7 (5th Cir. 2000). *See also United States v. Garcia*, 754 F.3d 460, 488 (7th Cir. 2014) (collecting cases from the Seventh Circuit Court of Appeals with similar facts). Furthermore, the murder cross-reference was properly applied notwithstanding the fact that Castillo's murder conviction was vacated. *See also United States v. Watts*, 519 U.S. 148, 152, 156 (1997) (holding a sentencing court could consider conduct underlying charges of which the defendant had been acquitted if the Government established that conduct by a preponderance of the evidence); *United States v. Bolton*, 908 F.3d 75, 95 (5th Cir. 2018); *United States v. Partida*, 385 F.3d 546, 565-66 (5th Cir. 2004).

Castillo also alleges the murder of Mr. Lamb was not reasonably foreseeable. However, the trial transcript clearly indicates the murder was reasonably foreseeable to Castillo; she brought a gun to the meeting of the conspirators to address what sanctions would be inflicted on Mr. Lamb

---

wherein the defendant waived their right to appeal by means of a written plea agreement, finding the court should first consider the validity of the waiver of the right to appeal. *See United States v. Viera*, 674 F.3d 1214, 1218-19 (10th Cir. 2012); *Nunez v. United* States, 546 F.3d 450, 454-55 (7th Cir.), *vacated on other grounds*, 554 U.S. 911 (2008); *United States v. Mabry*, 536 F.3d 231, 240-42 (3d Cir. 2008). On October 30, 2018, the United States Supreme Court heard oral argument on this issue in *Garza v. State of Idaho*. *See* Docket No. 17-1026 (U.S.), 2018 WL 5620812 & 2018 WL 5635949.

and to set-up the encounter between the conspirators and Mr. Lamb. (ECF No. 250 at 165, 262-63).[7] The trial testimony indicates Castillo was present at the scene of the kidnapping of the victim. (ECF No. 251 at 250). A law enforcement officer testified, based on her post-arrest statements, that Castillo "considered herself her own form of law ─ of law enforcement. She found people. And she also asserted herself as kind of the leader of her pack." (ECF No. 251 at 217).

Additionally, the murder did occur for the purpose of furthering the drug trafficking conspiracy; a coconspirator testified Castillo stated: "they [had] to hurry up and find [San Miguel, Saenz, and Lamb] and get rid of them because supposedly they were informants." (ECF No. 250 at 267).[8] The PSR stated: "It was determined in the investigation a cartel from Mexico was involved in the murder of Lamb, and members of the West Texas criminal street gang were also involved. Lamb may have been used as an example to other drug dealers." (ECF No. 283 at 8). The Fifth Circuit noted in *Smith* that U.S.S.G. §2A1.1 was properly applied to the defendant because, as with Castillo, the defendant had "participated" in the kidnapping and delivery of the victim to the actual

---

[7] The PSR states Castillo arranged for a codefendant to bring two weapons to the meeting. (ECF No. 283 at 7). Ms. Hernandez testified that Castillo "had [the revolver] in her hand when she walked in the apartment." (ECF No. 250 at 262).

[8] Ms. Hernandez testified, when questioned by the prosecutor:
Q. When she says, "We have to find them and get rid of them," was that [Castillo's] words?
A. Yes, sir.
Q. What did that mean you to? What did that tell you?
A. I guess she wanted to kill them.
***
Q. What discussion then transpired? What came of her statement . . . that it was necessary to get them and take care of them because they were snitches? What came from [the coconspirators], any comments?
A. No, sir.
Q. Any disagreements?
A. No, sir.
Q. What's going through your mind at this time?
A. Scared.
(ECF No. 250 at 267-68).

16

shooter. 2000 WL 992504, at *7. None of the afore-mentioned facts regarding Castillo's involvement in the conspiracy are implicated by the fact that Mr. Galan was the actual shooter and there is no reason to believe any coconspirator will testify at his trial that Castillo could not foresee Mr. Lamb would be killed.

Furthermore, even if Castillo were able to achieve resentencing on Count One there is virtually no likelihood the Court would impose less than the maximum sentence, given her involvement in the conspiracy and her actions after Mr. Lamb's murder. In addition to her involvement in the kidnapping of Mr. Lamb and the conspiracy to "get rid" of him, the PSR noted that when Castillo was arrested on other charges in Marfa she informed law enforcement she was "transporting Ruben Hernandez to Presidio so Ruben Hernandez could escape to Mexico to evade capture." (ECF No. 283 at 8).[9] Castillo further admitted she and another codefendant "sold the firearms which were used to kill Lamb to a person in Odessa. . . ." (*Id.*). Additionally, despite Castillo's statement that she has cooperated with law enforcement, in a letter to the District Court dated December 7, 2017, Castillo told the Court she had been placed in the custody of Ector County as a witness in a criminal trial, and that she was refusing to testify for the prosecution. (ECF No. 321).

### III. EVIDENTIARY HEARING

Castillo asks the Court to order an evidentiary hearing to determine if counsel ignored her instructions to file an appeal. (ECF No. 345). A District Court may deny a section 2255 motion without conducting any type of evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Rivas–Lopez*,

---

[9] As previously noted, Mr. Hernandez, who played a major role in the drug trafficking conspiracy, remains a fugitive.

678 F.3d 353, 358 (5th Cir. 2012) (citing 28 U.S.C. § 2255(b)). "To receive a federal evidentiary hearing, the burden is on the habeas corpus petitioner to allege facts which, if proved, would entitle [her] to relief." *United States v. Tubwell*, 37 F.3d 175, 179 (5th Cir. 1994) (internal quotations omitted). Conclusory allegations, unsubstantiated by evidence, are insufficient to support a request for an evidentiary hearing. *United States v. Reed*, 719 F.2d 369, 373 (5th Cir. 2013). A defendant is entitled to an evidentiary hearing on her § 2255 motion only if she presents "independent indicia of the likely merit of [her] allegations." *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008). Castillo's claims can be resolved without the presentation of additional evidence. A movant has the burden to prove by a preponderance of the evidence that she requested an appeal. *Tapp*, 491 F.3d at 266. Castillo has not met this burden.

## IV. CONCLUSION

Castillo has not established her counsel failed to consult with her about taking an appeal from her resentencing. Castillo has not established that her counsel ignored any timely and express direction to file a notice of appeal. Nor has Castillo established that any action on the part of counsel deprived her of a legal proceeding to which she was entitled.

## **CERTIFICATE OF APPEALABILITY**

An appeal may not be taken to the court of appeals from a final order in a proceeding under section 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings, the District Court must issue or deny a certificate of appealability when it enters a final order adverse to the movant. A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a

constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where the Court rejects a movant's constitutional claims on the merits, "the [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* In this case, reasonable jurists could not debate the denial of Castillo's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Thus, a certificate of appealability shall not be issued.

Accordingly,

**IT IS ORDERED** that Movant Stacey Castillo's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (ECF No. 343) is **DENIED**.

**IT IS FURTHER ORDERED** that Castillo's motion seeking an evidentiary hearing (ECF No. 345) is **DENIED**.

It is so **ORDERED**.

SIGNED this 6th day of February, 2019.

_____
DAVID COUNTS
UNITED STATES DISTRICT JUDGE